**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| LAURA JAQUEZ,<br>　　　*Plaintiff,*<br><br>vs.<br><br>ANDREW M. SAUL, COMMISSIONER<br>OF THE SOCIAL SECURITY<br>ADMINISTRATION,<br>　　　*Defendant.* | §<br>§<br>§　　No. EP-20-CV-00141-RFC<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Laura Jaquez appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act. Both parties consented to trial on the merits before a United States Magistrate Judge (ECF Nos. 1-3, 11), and the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C of the Local Court Rules of this district. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

**I.　PROCEDURAL HISTORY**

On September 20, 2018, Plaintiff filed an application for DIB and SSI, alleging disability beginning on November 30, 2017. (R:168, 172.) Plaintiff's application was initially denied on December 17, 2018 (R:62-63) and again upon reconsideration on February 13, 2019. (R:86-87.) On November 5, 2019, a *de novo* hearing was held before an administrative law judge ("ALJ") by video. (R:26.) The ALJ issued an unfavorable determination on November 22, 2019. (R:7.) The Appeals Council denied Plaintiff's request for review on April 20, 2020. (R:1.)

**II.　ISSUE**

1

Plaintiff's sole contention is that the ALJ's RFC determination is unsupported by substantial evidence. (ECF No. 17:2.) However, the Court finds that the following sub-issues exist within Plaintiff's claim:

1. Whether the ALJ erred at Step Three by finding Plaintiff ineligible for a *per se* disability listing. (ECF No. 17:3.)

2. Whether the ALJ erred at Step Five by assessing Plaintiff a residual functional capacity ("RFC") to do light work. (ECF No. 17:5.)

**III.   DISCUSSION**

    **A.  Standard of Review**

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, a court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986) (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1339 (8th Cir. 1984)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). A court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

### B. Evaluation Process

Disability is the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment(s) that is severe; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment(s) prevent the claimant from performing past relevant work; and (5) whether the impairment(s) prevent the claimant from doing any other work. 20 C.F.R. § 404.1520(4).

An individual applying for benefits bears the initial burden of proving that he is disabled. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof at the first four steps. Once met, the burden will then shift to the Commissioner to show that there is other substantial gainful employment available that the claimant can perform. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir.1988). If the Commissioner satisfies this burden, "the burden then

shifts back to the claimant to prove that he is unable to perform the alternate work." *Selders*, 914 F.2d at 618 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).

Here, at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2017, the alleged onset date. (R:12.) At the second step, the ALJ found that Plaintiff had the following severe impairments: "coronary artery disease with stenting, insulin dependent diabetes mellitus, chronic kidney disease, hyperlipidemia, diabetic polyneuropathy, bilateral proliferative diabetic retinopathy, bilateral cataracts, and hypothyroidism." (*Id.*) The ALJ also found Plaintiff's "medically determinable mental impairment of depression with insomnia" to be non-severe. (R:13.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R:13-14.)

Before the fourth step, the ALJ found that Plaintiff had the RFC to do light work. (R:14.) Specifically, the ALJ found that the Plaintiff was able to do the following: "occasionally climb ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid all exposure to hazards, such as operation control of moving, machinery and unprotected heights; no commercial driving; and limited to frequent near and far acuity." (*Id.*)

At the fourth step, the ALJ found that Plaintiff was able to perform past relevant work as an accounting clerk and administrative assistant. (R:17.) The ALJ found that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.*) The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 30, 2017, through the date of the ALJ's decision. (R:18.)

**C.  Analysis**

### a. Substantial evidence supports the ALJ's determination that Plaintiff's coronary artery disease is not equal to a listing.

Plaintiff first claims that the ALJ erred at Step Three in concluding that her coronary artery disease does not equal a listing. (ECF No. 17:3, citing R:14, referring to the listings at 20 C.F.R. Part 404, Subpart P, Appendix 1.) In particular, Plaintiff claims that the ALJ erred in ignoring evidence of angiography when considering her eligibility for a Step Three listing. (*Id.*)

In her briefing, Plaintiff highlights the following portion of the ALJ's opinion, which she argues constitutes error:

> The claimant's coronary artery disease does not meet listing 4.04 because there is no evidence of symptoms due to myocardial ischemia with limited exercise tolerance test, three separate ischemic episodes requiring revascularization or not amenable to revascularization within a consecutive 12-month period; *nor evidence of coronary artery disease demonstrated by angiography or other medically acceptable imagining*, and in the absence of a timely exercise tolerance test or timely normal drug-induced stress test where it has been concluded that performance of exercise tolerance testing would present significant risk to the individual.

(R:14, emphasis added.) Plaintiff points out that she received an angiogram in 2013, and that same year Dr. Raja diagnosed her with coronary artery disease, hypertension, severe peripheral artery disease, hyperlipidemia, and insulin-dependent diabetes. (ECF No. 17:3, citing R: 508, 512, 513, 514, 521, 522, 525, 577, 589, 592.) Plaintiff argues that this medical evidence contradicts the ALJ's finding of no coronary artery disease demonstrated by angiography. (ECF No. 17:3.)

A claimant must show that she has satisfied all the specified medical criteria of a Listing at one time, and for the requisite continuous 12-month period. 20 C.F.R. § 404.1509. "An ALJ may consider the effectiveness of a claimant's treatment in making a credibility determination." *Massaglia v. Saul*, 805 F. App'x. 406, 410 (7th Cir. 2020), citing 20 C.F.R. § 404.1529(c)(3)(iv)–(v). The 2013 medical evidence that Plaintiff cites is out of date because, according to Dr. Raja's

treatment records, Plaintiff underwent successful treatment in May of 2013 that left her "doing very well." (R:513.) Indeed, in Dr. Raja's treatment notes on November 5, 2013, he wrote that Plaintiff "denies any chest pain, shortness of breath or claudication . . . [Plaintiff] feels wonderful and is walking on a regular basis." *Id.* In his medical assessment, Dr. Raja wrote that Plaintiff had coronary artery disease but was "clinically stable and doing very well on current medical therapy." (R: 514.) Therefore, the 2013 medical evidence to which Plaintiff cites is inapplicable to the period of her claim, which alleges disability beginning in November 2017, because her symptoms improved after her treatment in 2013.

As this was the sole evidence on which Plaintiff sought to rely, Plaintiff has not met her burden to show that her coronary artery disease is equal to a listing. 20 C.F.R. § 404.1520(d); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (Plaintiff has the burden of proof at Step Three of the evaluation process). Although Plaintiff does point to other portions of the record, Plaintiff does not articulate how that evidence demonstrates that she is eligible for an Appendix listing; moreover, the organization of Plaintiff's brief is ambiguous, and it appears that evidence was raised by Plaintiff with regard to the RFC assessment. (*See* ECF No. 17:4-5 ("the objective medical evidence of severe coronary artery disease and severe peripheral artery disease is substantial . . . the ALJ erroneously assigned [Plaintiff] a light RFC without taking into consideration the medical opinions and evidence of both of these severe impairments.")) As Plaintiff has not clearly indicated how any other evidence applies to his Step Three argument, the Court will not consider it for those purposes. *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (The Court should "not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficienc[y] he alleges."). Therefore, the Court has no basis to conclude that the ALJ erred at the third step.

### b. The ALJ did not err in assessing Plaintiff with an RFC to do light work.

Plaintiff next argues that the ALJ erred in deciding that she had the RFC to do light work. (ECF No. 17:5.) In particular, Plaintiff argues that the ALJ "erred in disregarding the medical opinions of Dr. Raja without explanation, which resulted in an RFC not based on substantial evidence." (*Id.* at 6.)

Plaintiff argues that the ALJ ignored the 2013 medical findings of Dr. Raja regarding her cardiac catherization, recanalization with two stents inserted, hypertension, peripheral artery disease, hyperlipidemia, and insulin-dependent diabetes severe claudication with chronically occluded right superficial femoral artery. (ECF No. 17:3, citing R:508, 513-14, 521-22, 525, 577.) Plaintiff also cites Dr. Raja's March 2019 notes of treatment history, in which he diagnoses Plaintiff with native coronary artery without angina pectoris, generalized edema, mixed hyperlipidemia, overweightness, type 1 diabetes mellitis, PAD with intermittent claudication, shortness of breath, and aortic valve stenosis. (ECF No. 17:4, R:577.)

Regarding the 2013 evidence, the ALJ wrote that Plaintiff had "coronary artery disease, status post stenting in 2012 with hyperlipidemia," citing Dr. Raja's treatment notes from a 2018 examination in which he discussed Plaintiff's 2013 treatment and subsequent history. (R:15, citing R:315.) The ALJ then considered the 2013 medical evidence with Plaintiff's 2018 and 2019 treatment evidence, writing:

> Chest x-ray performed in January 2019 revealed no acute cardiopulmonary disease [citing R:485]. An echocardiogram showed normal eft [*sic*] ventricle ejection fraction [citing Dr. Raja's treatment notes regarding the echocardiogram, R:503]. She was considered clinically stable from a cardiac standpoint with no symptoms of angina, shortness of breath, or claudication documented [citing Dr. Raja's March 2019 notes of treatment history, R:577]. Testing showed no evidence of any hemodynamically significant recurrent peripheral arterial disease [citing Dr. Raja's treatment notes of an ABI study, R: 617]. Concerning the claimant's coronary artery disease and hyperlipidemia, I find the claimant is limited to the above residual functional capacity.

7

(R:15-16.) Reviewing the ALJ's discussion of the medical evidence regarding Plaintiff's coronary artery disease, the Court is unable to find any significant medical evidence that the ALJ failed to weigh. Indeed, each of the portions of medical evidence that Plaintiff asserts the ALJ failed to consider are summarized or referenced in the portions of the ALJ's opinion quoted above. To that extent, Plaintiff is incorrect to assert that the ALJ "erred in disregarding the medical opinions of Dr. Raja without explanation." (ECF No. 17:6.)

Although the ALJ did not provide a detailed explanation of how he assigned weight to every piece of medical evidence generated by Dr. Raja, the record clearly demonstrates that the ALJ considered each of Dr. Raja's findings and relied on them in formulating Plaintiff's RFC. As such, the Court finds that the ALJ's RFC determination was supported by substantial evidence and should be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

### IV.   CONCLUSION

Based on the foregoing, the Court hereby **ORDERS** that the decision of the Commissioner be **AFFIRMED**.

**SIGNED** this 27th day of October, 2020.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE